You may proceed. If it pleases the Court, Michael Cleff on behalf of Petitioner-Appellant Felix. I'd like to reserve two minutes of my time given this short constraint. So I'd like to be very brief initially because I'm sure the Court will have some questions. First, with regard to the supplemental case that was submitted to CBOT, I would suggest that that case is clearly distinguishable on the grounds that it did not involve an initial commitment. Mr. Felix is not suggesting that the only option that this Court has is to release him immediately, although I would suggest that in CARTI that was one of the forms of relief that the Court said it could give if it in fact found that the initial commitment was unreliable. With regard to the larger due process argument, I come back to mootness in a second. I think that the most crucial thing for the Court to pay attention to is to the analysis of what underlie the underlay the State supreme court opinion, because as I tried to establish in my opening brief, it was not simply based on instructional error. If you actually trace back Hurtado, you find that Hurtado was based very largely on two cases, Gelati, or on a case, Gelati, and additionally on an extensive law review article, which was explicitly cited in Hurtado, both of which made clear that the instructional error itself was a due process, created a due process violation under Marsh and other precedents from the supreme court. The government's never really addressed that question. It's continually tried to assert that it was simply a State law instructional error. I would suggest this is a case where if you read the cases, you look back to the history, you find that there was a due process. Go ahead. I'm sorry. I guess the thing that jumps out at me most prominently is whatever happened in the earlier 1998 commitment trial, whatever the mistake was, weren't those mistakes washed out by the 2006 trial where there isn't any argument that there was any error at all? So what is the prejudice that your client suffered as a result of something that happened in 1998? However it was wrong, given the fact that you had a trial as to which it is undisputed that there was no error in 2006, where's the prejudice? Well, first place, I think the assumption that there was no error in 2006 assumes that there was no error in 1998, because if there had not been, if he had not been committed in 1998, he would not have been eligible for recommitment. He spent eight years in which he did not have an opportunity to fully litigate the claim that is only now before this Court. If he had had that opportunity before 2006, it would have entirely changed the context and 2006 may not have even occurred. But I think that that question, and admittedly some of these opinions, it's more indicative than it is in rulings, but I would suggest, and this goes back to what I said about Seaboth not being a positive at all, Hubbert, Cardi, Jackson, and Messiccio-Fonseca, I apologize if I don't pronounce it right, all four of those opinions very specifically lay out grounds why his claim is not mute. I would suggest in Hubbert the critical question is did he have a chance to fully litigate his claim? We know he didn't. He has not to this day had a chance to fully litigate his claim. I'm not citing it, but there are unpublished opinions in this Court that make that point, that until someone gets to Federal court, they haven't really had an opportunity to fully litigate their claim. I have one question I'd like you to address for me. Sure. And that is I thought that the 2006 proceeding resulted from the filing of a new document, a petition to have your client civilly committed. Is that incorrect? Yes. So how did the 2006 trial come about? Well, this case is a procedural mess. I've tried to track through all the Superior Court records. That's alluded to in the brief, and I put in the record. What happened was he was committed in 1998. And that commitment was for two years? Two years. There was another commitment in 2000, petition filed. There was evidently a trial of some sort, which there's no record of. The ‑‑ I've gone through the Superior Court files because I've also been dealing with the 2006 issue, and there was ‑‑ I simply couldn't determine. But from the record it's clear there was some sort of a trial which was then set aside and that there was then some sort of a stipulation in or to on the part of both parties, and it was a trial both on the petition and on his countervailing petition to be released. Then a new petition was filed in 2002, no trial. A new petition again was filed in 2004, no trial. Then in July of 2006, another new petition was filed. Well, that was exactly my question. But let me, if I can beg your pardon, I'll just complete it. What then happened is the State consolidated the 2002 and the 2004 petitions, and then after the change in the SVPA law, moved forward on that consolidated petition as an indeterminate commitment petition, and then ultimately dropped the 2000, dismissed the 2006 petition. Okay. Let me now ask the follow‑on question. Whether we view this as a 2002 and 2004 petition consolidated or a 2006, in either case, I'm not sure I follow your argument that but for the 1998 two‑year commitment period, he wouldn't have been eligible to have such a petition filed against him. What is the basis for your saying that? In other words, why isn't this new petition available to the State, regardless of what happened in 1998? First, as I said, it wasn't a new petition. Secondly, though, I think that clear decisions, which I'm aware members of this Court were involved in, first made the point in both Jackson and I'll call it Fonseca for simplicity's sake, that the initial commitment that later commitments are directly traceable, I think was the language, to the initial commitment. And in both of those cases, Jackson involves standing. It's explained in the brief. They said in those circumstances, a challenge to a successive petition is not, would be moot. A challenge that goes back to the initial petition is, in fact, one in which there is still meaningful relief that can be found. In Cardi, the Court specifically said if we – said Cardi's second argument has merit. If we conclude the State court's finding of substantial sexual conduct at the June 1990 hearing was unconstitutional, then Cardi's October 2001 hearing would also be unconstitutional. Put another way, if we find Cardi's due process argument persuasive, we can strike both the June 1999 civil commitment and the October 2001 recommitment and relieve Cardi. In this case, I'm not suggesting that's the only option this Court has. I want to end real quick because I want to preserve at least a minute. But I think that if you clearly follow Cardi, Jackson, Hubbard, and contrast the circumstances even in Seaboth with the circumstances in Felix, you find this is not moot, and the government has essentially never addressed the issue of the underlying due process violation. It didn't do it, the State court didn't do it, and the government has not. Thank you. Okay, thank you. We'll hear from the respondent. May it please the Court, Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, it's our position that this case is moot and it's also clearly harmless. This was a recommitment petition, right? Yes. And in order to have recommitment, don't you have to have an initial commitment? Yes. And doesn't the committee or whatever they call him, defendant, have to be in custody? He has to be in custody and he was. And he was in custody pursuant to what? At the time of this 1998. No, no. At the time of the 2006. Your argument is it's moot because he's now in custody under the 2006 commitment, right? Correct. Okay. 2006 commitment is a recommitment order. Yes. Right? And in order to be recommitted, you have to be in custody to begin with. He was in custody pursuant to. You have to be in custody to begin with, yes? Yes. Okay. And what was he in custody for at the time of the 2006 commitment that gave authority for the 2006 recommitment? The 1998 initial civil commitment. So why isn't the 1998 commitment now live? Because if that's invalid, he would not have been validly in custody and, therefore, there would have been no basis for the 2006 petition. He has to be in custody and he clearly was in custody. He was incarcerated. But if the custody is unlawful, which is challenging now the lawfulness of the 1998 commitment, if that goes away, poof, doesn't that also then take with it the 2006 commitment, which depended upon lawful custody at the time it was commenced? No, it's not dependent on lawful custody. As this Court held in the Hubbard case. So they could just hold him illegally and so long as they've got him under lock and key, you can start a recommitment proceeding? I think that's answered by California Welfare and Institutions Code section 6601A2 where, written into the statute, it says that a petition shall not be dismissed based on a later judicial determination that the custody was unlawful if it was the result of a good-faith mistake of factor law. So I think it's unlikely that anyone would look at that 1998 commitment and find that it was actually unlawful. Because the case that vindicated his position was not decided until 2002, correct? Exactly. So at the time of the 1998 civil commitment, the predatory requirement didn't exist yet. It was only after his trial and after his conviction was final that the California Supreme Court judicially read that element into the statute. So clearly there was no bad faith. Everybody was operating on the assumption at the time that that was not a requirement. I'm sorry, why is that just an argument? That doesn't make the issue moot. That just makes the question of whether the 1998 commitment was, in fact, a proper basis for having him in custody. But that's an argument. But the case was dismissed by the district court on mootness grounds. Yes. And I was answering the Court's question about why he was properly in custody at the time when the 2006 commitment petition was filed. But the larger question of whether that makes it moot is that this Court can't grant any meaningful relief at this point, because he has been now recommitted under, with a trial where the jury was properly instructed on that predatory acts element. The experts testified about it. The prosecutor argued it. The defense did not contest it. What if it's determined that the 1998 commitment was not only unlawful, but also willfully unlawful? I'm sorry, I didn't hear you. What if it's determined that, in fact, this was in bad faith, that the 1998 commitment was in bad faith, not just unlawful, but in bad faith? I think there might be a problem if the Court were to go that far, but I think that is. But that's a merits question. That's not a mootness question. So long as attacking the 1998 judgment on some basis can grant him relief in this case, it seems to be the case it's in moot. That's something you argue at district court, and you say, well, yes, it was invalid, but we had a good faith because the decision was, you know, all of those things. Right? But that doesn't make the issue moot. It just makes it a merits question, which the district court didn't decide. Right? The test of mootness is whether there has been something that happened after the litigation began that has made him lose his continuing interest in the case. And that 2006 commitment, which, by the way, it's already gone through the State courts and the Federal courts, and the Ninth Circuit has denied a COA. So that case is final, it's over, it's done, and it's valid. And so at this point, it's our position that the Court couldn't grant any relief because of this. Is this the point that if it turns out the 1998 commitment was unlawful, it still can't go away? And in bad faith, it couldn't undo the 2006? I think that's possible. I think that it actually is possible. Well, if it's possible, then why doesn't that mean the case is not moot? And you have to go back and actually win on the merits, whatever you want to say about the 1998 commitment. You've got to say it was in good faith, it was – it may have been wrong, it was in good faith, but you have to win it on the merits. You can't just say we can't even look at it. We actually do have a merits determination from the district court as well where he found that it was unlawful. I thought this was – the appeal here was entirely on mootness. It was dismissed as mootness, and we're reviewing mootness. I didn't think that we were reviewing the merits. I thought there was some discussion also about – In the briefs here? I thought this was entirely on mootness. Because we've discussed the question of – Did you defend on the merits? Did you defend the – Yes. In your brief? Yes. Yes. And clearly, any error in the absence of the predatory instruction at the 1998 civil commitment trial was harmless. And we know that in part from the fact that – I'm looking at your – I'm looking at the table of contents of your briefs. The district court probably found the case moot, and no exception to the mootness doctrine applies here. And then any instructional error was harmless. That's the merits of this argument. I see. But you're not arguing good faith or anything like that in there. Oh, absolutely. And we argued that in our brief, too. There couldn't possibly have been bad faith, because that element did not exist at the time of the trial. It was only after the trial was completely over that the California Supreme Court held judicially that it implied this new element into the statute. So there was no way that the trial court could have thought that that was an element at the time. It literally didn't exist until later when the California Supreme Court read that into the statute. And what happened in that case? Did they set aside the commitment? No. They found it was harmless. In the Hurtado case, the California Supreme Court said, based on the language of the statute, we believe that the jury does have to find that the defendant was likely to commit predatory acts if he were released. And it held that the failure to instruct the jury was harmless in that case. Yes, it did. It did. So your position is that if we found that what happened in 1998 was sufficiently horrendous, just to use a loose adjective, that we had to knock it out, there's nothing we could do to undo what happened in 2006. And if we decided to undo what happened in 2006, the only result would be exactly the same trial in 2015 that occurred in 2006, simply repeating with the same evidence a second time. Yes. And we know that that jury was properly instructed. The issue was raised. The defense didn't dispute it. This man is the poster child for the SVP law. All of his acts have been predatory, which is defined as against a stranger or an acquaintance. And all of six of his victims were literally grabbed off the street or from public places. One was a neighbor that he had never met before. So there was no question at the 2006 trial that if he was likely to reoffend, it was going to be predatory. And in fact, one of the experts, Dr. Arnold, testified at the 2006 trial that Felix experienced sexual arousal from the fact that his victims were non-consenting strangers. So there would be no reason to have yet another trial when we have this error-free trial from 2006 where the properly instructed jury found that he was, in fact, a sexually violent predator. Okay. Thank you. Thank you. I obviously have very limited time, so I'll try to be very brief. One, the statement that he is the poster child for the SVPA, I think, is clearly way off base. All I suggest is you compare the facts of Mr. Felix's case to the facts of the Seaboth case, which the government has raised, and the facts of the Hurtado case. Okay. But let me interrupt, because what's the connection between 1998 and 2006? How was your client prejudiced in 2006 by what happened in 1998? Three things. One, if there was a 1998, there would have never been 2006. Two, it is not true that the 2006 was a de novo trial. If you read through the record, it's absolutely clear that what happened in 2006 was there was all sorts of evidence that wouldn't even have been presented. The relief that he would have gotten if this case had gotten to this Court before would have been a retrial on 1998, which would have had to have been on the same basis as the evidence in 1998. It wouldn't have been adding in all this evidence, much of which came from the fact that they were actually he was in custody in a Tuscadero. They had him, you know, and I think that's clear. So if there is no 1998 commitment, there is no 2006. And in terms of the harmlessness, I briefed that extensively, but I would remind the Court he was initially found, they tried to commit him first in February, and there was a hung jury. There was a mistrial. The government has never addressed any of the factors that relate to harmlessness. This, to me, is an absolutely egregious violation. To say, and I put a line in there which I don't think is too strong, that if the Soviet Union, former Soviet Union, I'm sorry for my age, if Russia or China were to explain how they had held someone for 8 years, but it was all the problems with what they'd held them for 8 years, goes away because, well, now we've gotten a new commitment. I think we would be outraged. I think we should be outraged here. I don't think that it is good that the State law exception falls. And my time is obviously up. Thank you. Do you think the district court did rule on the merits or not? No. I think the district court, and I think my briefing was very clear on that. The district court first made what is, I think, an absolutely clear error when it said that the basis was a State law basis. I briefed that extensively. The government's never responded to the analysis of Hurtado and the basis of Hurtado, that it was a due process, Federal due process basis that the court chose. Secondly, the court itself, and if you follow all the briefing, this case was in the district court for 8 years. The court struggled, denied it at one point, brought it back, and then in its opinion it says arguably if there was a due process violation, then it was still moot. And I think that the district court essentially kicked the issue back. And I agree entirely with the court. I think that what is appropriate here, obviously my preference would be that my client is released, but what I think is appropriate is that the case be remanded back to the district court, that issues such as whether or not he can – there is a due process – I think there is a due process violation, but issues having to do with the harmlessness. There was never an evidentiary hearing on whether or not the 2006 hearing trial was in fact influenced by evidence and developments from the 1998. One of the points the government has repeatedly made is, well, it was harmless because the jury was – didn't know anything about the procedure in 1998. Well, I would argue that that shows that it was harmful, because if in fact the jury had been told, oh, well, Mr. Felix has spent the last 8 years in a Tuscadero based on a due process violation, I think it would have been a different – a different outcome. I apologize for going over my time. Thank you. Thank you. The case is argued and will stand submitted.
judges: Ponsor, Kozinski, Graber